UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                                    CASE NO.  8:13-cv-343-T-23TGW
                                                               8:09-cr-248-T-23TGW

NEY AYBAR

_____/


## ORDER

     Ney Aybar moves (Doc. 1) under 28 U.S.C. § 2255 to vacate his sentence.
Aybar challenges the validity of his conviction for conspiracy to distribute and to
possess with the intent to distribute five kilograms or more of cocaine.  Aybar serves
131 months of imprisonment.  The United States admits that Aybar timely moves to
vacate.  (Doc. 12 at 2)

## FACTS

     Trial testimony established that in 2008 Aybar (as driver, transporter, and
packager) supported a group that attempted to purchase kilogram quantities of
cocaine from Florida undercover officers.[1]  Co-conspirators Reynaldo Lopez and
Jose Valerio and other witnesses testified that from 2003 to 2007 Aybar knowingly
performed drug trafficking activities for the group.

_____

[1] This summary of the facts derives from the circuit court's decision (Doc. 81 in 09-cr-248)
on direct appeal.

In a rented vehicle and with Lopez and Valerio as passengers, Aybar drove from New York toward Florida. In North Carolina, a police officer stopped Aybar for speeding. The officer observed Valerio's suspiciously nervous behavior. (Doc. 73 at 119 in 09-cr-248) After inspecting the vehicle's rental agreement, the officer discovered that the renter of the vehicle was not present and that mileage was limited to 150 miles each day. (Doc. 73 at 120 in 09-cr-248) Aybar and Lopez offered conflicting responses to the officer's questions about the renter of the vehicle and about the group's destination. (Doc. 73 at 117–118 in 09-cr-248) A consensual search of the vehicle revealed six bundles of money, which Lopez claimed. (Doc. 73 at 122–27 in 09-cr-248) Each bundle was wrapped in dryer sheets and encased in plastic film. The officer seized the money but arrested nobody.

After the stop, Aybar continued driving the group to Florida. (Doc. 73 at 151 in 09-cr-248) In Tampa, Aybar's co-conspirators attempted to purchase several kilograms of cocaine from undercover officers, who arrested the co-conspirators at that moment. Officers initially detained Aybar but released him for an apparent lack of involvement in the sale (but a later and more through investigation uncovered Aybar's involvement in the drug-trafficking scheme). (Doc. 73 at 20 in 09-cr-248) After the investigation, the United States indicted Aybar for conspiring to possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1 in 09-cr-248) In 2010 a jury convicted Aybar of the offense. (Doc. 55

in 09-cr-248)  Offense Level 34 and Criminal History Category I yielded an advisory

guidelines range of 151 to 181 months of imprisonment and the circuit court affirmed

Aybar's sentence of 131 months of imprisonment.  *United States v. Aybar*, 446

Fed. App'x 221 (11th Cir. 2011).  On January 28, 2016, Aybar's sentence was

reduced to 121 months under 18 U.S.C. § 3582(c)(2) and Amendment 782 of the

United States Sentencing Guidelines.  (Doc. 90 in 09-cr-248)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Aybar claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas,*

46 F.3d 1506, 511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386

(11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998),

explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Aybar must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691–92. To meet this burden, Aybar must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Aybar cannot meet his burden by showing only that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that counsel has no duty to raise a non-frivolous claim).

## DISCUSSION

Aybar alleges a pervasive incompetence by his trial counsel from pre-trial through sentencing. In the motion to vacate (Doc. 1), which is primarily a compilation of conclusory and factually unsupported allegations, Aybar identifies

thirty "errors" by counsel. Aybar re-argues several of the purported errors both in a "memorandum of law" and in a reply brief, which together comprise over a hundred pages of mostly conclusory and factually unsupported allegations. (Docs. 5 and 14)

This order divides Aybar's allegations into three categories: (1) ineffective assistance of counsel at the pre-trial phase, (2) ineffective assistance of counsel at trial, and (3) ineffective assistance of counsel at sentencing.[2]

## I. Ineffective assistance of counsel at the pre-trial phase

### 1. Grounds one through four, seven, and eight

Aybar alleges that counsel failed to properly investigate evidence, witnesses, and defenses. (Doc. 1 at 7) Without citation to evidence, Aybar argues that "[t]rial counsel failed to even conduct the most cursory investigation or to review discovery," including police reports, co-conspirator statements, and plea agreements. (Doc. 5 at 30) Aybar asserts that, but for counsel's deficient investigation, exculpatory evidence "would have shed significant doubt on the Government's case." (Doc. 1 at 8) But counsel's affidavit states that he reviewed all discovery, that he requested discovery, and that he attempted to interview witnesses. (Doc. 12-1 at 4) Also, counsel affirmed that he "personally reviewed any and all discovery with Mr. Aybar" and that he "was not aware of any set of facts offered through Mr. Aybar that an alibi defense was even a remote or potential possibility." (Doc. 12-1

---

[2] Under each of the three categories, the numbered grounds mirror Aybar's numbered grounds (Doc. 1 at 3-5).

at 1 and 5)  Aybar fails to rebut counsel's affidavit with a specific fact that counsel's investigative decisions constitute an unreasonable strategy.  *Tarver v. Hopper*, 169 F.3d 710, 715 (11th Cir. 1999) (noting that counsel is not required to investigate all available mitigating evidence).  Aybar's unsubstantiated allegation that counsel failed to thoroughly investigate evidence, witnesses, and defenses lacks merit.

With no further explanation, Aybar states that counsel "failed to move for *Brady* evidence."  (Doc. 1 at 3)  Counsel's affidavit states that he "had no reason to believe the Government was not adhering to their requirement [to disclose evidence] under the law."  (Doc. 12-1 at 5)  The claim fails for at least two reasons.  First, Aybar forfeited this claim because he could have raised the claim on direct appeal. Second, even if Aybar raised the claim on direct appeal, the claim fails because Aybar identifies no purportedly undisclosed evidence, and Aybar fails to further brief this ground in the motion, in the "memorandum of law," or in the reply.  Aybar's factually unsupported allegation fails to satisfy *Strickland's* requirements.

## 2. Ground five

Aybar disputes the legality of the North Carolina traffic stop based on the police officer's purported "unlawful ordering an individual out of a car or the subsequent consent to search, statements made without the reading of *Miranda* warnings, or the search of the contents of the luggage found in the truck."  (Doc. 1 at 8 and 12)  Aybar alleges that counsel performed deficiently by failing to file a motion to suppress the search of the vehicle or suppress Aybar's statements.  (Doc. 1

at 3 and 8–9; Doc. 5 at 7–8)  In his affidavit, counsel responds that he could not file

in good faith a motion to suppress because "the information provided by Mr. Aybar

was consistent with the discovery showing Mr. Aybar provided knowing consent to

search the vehicle, was not under arrest at the time of this consent and voluntarily

answered all questions of the Sheriff's deputy truthfully and completely."  (Doc. 12-1

at 5)  Aybar admits (Doc. 17 at 2) that he "gave the consent to search the vehicle."

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (holding that a consensual search is

constitutional).  Counsel's failure to raise a meritless claim cannot establish deficient

performance.  *Chandler*, 240 F.3d at 917.

Also, Aybar fails to explain why a successful motion to suppress the North

Carolina stop, which was conducted by officers not participating in the Florida

undercover investigation, would justify an acquittal on the conspiracy charge.

*Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986) (holding that a defendant must

prove both that the underlying Fourth Amendment claim was meritorious and a

reasonable probability of a more favorable verdict absent the suppressible evidence).

Aybar's failure to establish prejudice precludes relief on this ground of ineffective

assistance of counsel.

### 3.  Ground six

Counsel unsuccessfully moved in limine under Rule 404(b), Federal Rules of

Evidence, to exclude evidence about Aybar's earlier criminal conduct.  On direct

appeal, the circuit court held that "the district court did not plainly err in concluding

that the earlier criminal conduct was inextricably related to the charged conspiracy, and that Rule 404(b) therefore did not apply." *Aybar*, 446 Fed. App'x at 226.

Aybar alleges that counsel performed deficiently by "failing to effectively move in limine as to testimony inadmissible under Federal Rules of Evidence 404(b)." (Doc. 1 at 3)  But the circuit court noted that Aybar's earlier drug trafficking activity is both similar and proximate in time to Aybar's driving co-conspirators to Florida to purchase cocaine from undercover officers. *Aybar*, 446 Fed. App'x at 226.  The circuit court's ruling on direct appeal upholding the admissibility of Aybar's earlier criminal conduct precludes a successful argument that counsel performed deficiently.

Even if Aybar's claim is not procedurally barred, Aybar's collateral challenge to counsel's purportedly deficient motion in limine fails to rebut the strong presumption that counsel performed reasonably.  Aybar alleges that "uncorroborated and inconsistent witness testimony" about Aybar's earlier drug deals inflamed the jury. (Doc. 5 at 20–28)  Aybar asserts that "it was error for the Court to admit the evidence and error for trial counsel to not object to or properly litigate these issues." (Doc. 5 at 26)  But Aybar offers no reasonably specific prior-bad-act testimony subject to Rule 404(b)'s limitation.  Consequently, Aybar's unsubstantiated claim that counsel rendered deficient performance by unsuccessfully moving to exclude "uncorroborated and inconsistent witness testimony" on Rule 404(b) grounds fails. To the extent Aybar attempts to challenge the sufficiency of the evidence supporting

his conviction through a claim of ineffective assistance of counsel, the circuit court's conclusion that sufficient evidence supports Aybar's conviction precludes the claim.

### 4. Ground nine

The United States proposed a plea that would have allowed Aybar "to plead to Count One and become safety valve eligible." (Doc. 12 at 20) Whether to offer a plea and whether to include certain terms in that agreement are each a matter of prosecutorial discretion. *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) ("[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including . . . the cooperation of the prosecutor, who has no obligation to offer such an agreement.").

Aybar alleges that, but for counsel's failure to explain in Spanish the risks and benefits of pleading guilty, Aybar would have both pleaded guilty and received a lower sentence. (Doc. 14 at 7) Counsel's affidavit states that he "attempted to negotiate a plea for Mr. Aybar but he was adamant that he was not guilty, did not know of the conspiracy or drugs and would not plead to something that he did not do." (Doc. 12-1 at 6) Aybar submits no evidence to rebut counsel's tactical justifications.

Even if counsel performed deficiently, Aybar fails to show that, but for counsel's failure to translate into Spanish the proposed plea, Aybar would have accepted the proposed plea. Also, Aybar fails to show a reasonable probability that the district court would have accepted the plea and that he would have received a

lesser sentence. *Lafler v. Cooper,* 566 U.S. 156 (2012). Although not dispositive, Aybar's recent "memorandum of re-sentencing" maintains his innocence. (Doc. 17) Without more, collateral counsel's after-the-fact assertion about Aybar's purported desire to plea fails to satisfy *Strickland's* requirements and precludes relief on this claim of ineffective assistance of counsel.

### 5. Ground ten

Aybar asserts that counsel performed deficiently by failing to advise Aybar about the immigration consequences of a guilty verdict. (Doc. 1 at 3) Counsel's affidavit states that he "specifically discussed with Mr. Aybar the consequences of a conviction with his immigration status. He would not hear of anything because he was not guilty and the jury would see it through the presentation of the evidence." (Doc. 12-1 at 6) Aybar fails to further brief this ground in the motion or in the "memorandum of law." Aybar comments (Doc. 14 at 8) in the reply that counsel's affidavit "fails to specify what he told Aybar as to immigration consequences." Without more, Aybar's factually unsupported allegation fails to support an ineffective assistance of counsel claim.

### 6. Ground eleven

Aybar alleges that counsel failed to compel the confidential informant's appearance at trial. (Doc. 1 at 3) Aybar asserts that, but for counsel's deficient performance, the informant's testimony would show "that Aybar was not present for any of the discussions and did not participate in any of the calls or agreements."

(Doc. 5 at 11)  But trial testimony established that Aybar participated in the conspiracy as a driver, not as a negotiator.  Counsel's affidavit states that he failed to compel the informant's appearance at trial because "Mr. Aybar was never a part of any of the discussions and/or negotiations regarding the purchase and sale of drugs at any time."  (Doc. 12-1 at 6)  Aybar cannot show deficient performance based on counsel's failure to compel an unnecessary witness.  Even assuming deficient performance, Aybar fails to show that the informant's purported testimony exculpates Aybar as the conspiracy's driver.  Because Aybar fails to show both deficient performance and resulting prejudice, he cannot prevail on this ground of ineffective assistance of counsel.

## II. Ineffective assistance of counsel at trial

Aybar alleges that the cumulative effect of counsel's trial errors results in a denial of his right to a fair trial.  (Doc. 5 at 3 and 42–44)  "Without harmful errors, there can be no cumulative effect compelling reversal."  *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985); *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("The court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our Constitution.").  Because each of Aybar's ten grounds (Doc. 1 at 4) of ineffective assistance of counsel at trial lacks merit, no cumulative prejudice results.

### 1. Grounds one and two

Aybar alleges deficient performance based on counsel's trial performance including the "failure to object to evidentiary issues, including hearsay, 404(b) character evidence, lack of personal knowledge, *etc.*," which subjected Aybar "in some instances to a more stringent standard on appeal." (Doc. 1 at 4) Aybar asserts that, but for counsel's numerous omissions and weak cross-examinations, witness testimony would have shed a reasonable doubt on Aybar's knowing participation in the conspiracy. (Doc. 1 at 9–17) The forty-two page chart attached to Aybar's reply identifies each purported missed opportunity for counsel to object or cross-examine. (Doc.14-1 at 7–36)

Counsel's decision whether to — and how to — cross-examine is a strategic decision entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181 (11th Cir. 2001). Counsel's affidavit states that he "specifically made strategic decisions in all of his objections and lack thereof . . . and believes he protected the rights of his client effectively." (Doc. 12-1 at 6–7) Aybar advances no persuasive argument that counsel performed outside the wide range of professional representation. *Bates v. Sec'y, Florida Dep't of Corr.*, 768 F.3d 1278, 1297 (11th Cir. 2014) ("[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."). Aybar primarily complains that counsel should have elicited testimony about Aybar's lack of knowing participation in both the negotiation and the transaction of illicit drugs. (Doc. 1 at 15; Doc. 5 at 11–13) But

Aybar participated in the conspiracy as a driver, not as a negotiator or a seller. Aybar cannot show counsel's deficient performance based on a failure to elicit irrelevant testimony.

Also, Aybar fails to show a reasonable probability that, but for counsel's purported errors, the jury would have acquitted Aybar. Counsel's affidavit states that he subjected the United States' case to adversarial testing by throughly cross-examining each witness "using all available information to impeach the witness and damage their credibility in the eyes of the jury." (Doc. 12-1 at 8) The record demonstrates that counsel labored diligently to defend Aybar; counsel examined witnesses, objected to testimony, and made legal arguments supported by the facts and the law. Aybar lost in the face of considerable evidence, including witnesses's consistent testimony that he participated in the conspiracy primarily as a driver. "Absent a showing of a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial, a [petitioner] is unable to show prejudice necessary to satisfy the second prong of *Strickland*." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001). Aybar fails to show that a different cross-examination might have yielded an acquittal. Aybar attaches no affidavit or other evidence that a witness, for example, could have exculpated Aybar. Because substantial evidence establishes Aybar's participation in the conspiracy, no reasonable probability exists that counsel's performance undermines confidence in the outcome of the case.

## 2. Grounds three and four

Aybar alleges that counsel failed to propose *voir dire* questions, failed to inquire into juror bias, and failed to challenge jurors for cause. (Doc. 1 at 8) Effective assistance of counsel is required during *voir dire*. *Brown v. Jones*, 255 F.3d 1273 (11th Cir. 2001). But "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 561 U.S. 358, 362 (2010). Counsel reasonably explained that he declined to challenge jurors because the district court conducted a thorough *voir dire*. (Doc. 12-1 at 7)

Even assuming deficient performance, Aybar demonstrates no prejudice from counsel's purportedly inadequate *voir dire* questioning. Because empaneled jurors are presumed impartial, *Smith v. Phillips*, 455 U.S. 209, 215 (1982), to satisfy *Strickland's* prejudice prong Aybar must show that the juror selection process produced a biased juror. *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001). Aybar identifies several opportunities for counsel to further question jurors. (Doc. 14-1 at 1–6) Absent a showing that an empaneled juror was biased against the defendant, the defendant's disagreement with counsel's tactics or strategy during *voir dire* supports no claim of ineffective assistance of counsel. *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982). Aybar presents no evidence to show either a biased juror or a problematic jury selection. Aybar's failure to satisfy *Strickland's* requirements precludes relief on this claim of ineffective assistance of counsel.

## 3. Ground five

Aybar asserts that counsel failed to object to both the jury instructions and the verdict form. Counsel's affidavit states that he "believes all relevant and legal instructions were given by the Court prior to closing arguments including all relevant instructions on the law of conspiracy." (Doc. 12-1 at 7) Aybar fails to further brief this ground in the motion, in the "memorandum of law," or in the reply. Aybar's factually unsupported allegation fails to support an ineffective assistance of counsel claim.

### 4. Ground six

Aybar alleges that counsel's failure to object to evidence about the conspiracy, as a predicate for the admissibility of co-conspirator statements under Rule 801(d)(2)(E), Federal Rules of Evidence, subjected co-conspirator statements to plain-error review on direct appeal. (Doc. 1 at 17; Doc. 5 at 12–13) Aybar describes the predicate facts of the conspiracy as purportedly unreliable, vague, or uncorroborated. (Doc. 5 at 12–13) But Aybar offers no specific objection that counsel might have successfully asserted. A review of the record shows consistent witness testimony about both the existence of the conspiracy and Aybar's involvement in the conspiracy primarily as a driver. Again, Aybar fails to show that counsel's representation fell below an objective standard of reasonableness.

### 5. Ground seven

Aybar alleges that counsel performed deficiently by failing to introduce Lopez's and Valerio's pleas. Aybar argues that the each plea "would have provided material for cross-examination and impeachment of witness testimony." (Doc. 1 at 7) But Lopez testified that, under his plea, the United States might recommend a reduction of his sentence in exchange for trial testimony. (Doc. 73 at 189 in 09-cr-248) And Valerio testified that he agreed to testify at Aybar's trial as part of his plea. (Doc. 73 at 158 and in 09-cr-248) Aybar speculates that introducing each plea "would negate Mr. Aybar's guilt, or at a minimum create reasonable doubt in the minds of the jurors." (Doc. 1 at 9)

Counsel affirmed that he cross-examined each witness "using all available information to impeach the witness and damage their credibility." (Doc. 12-1 at 8) Aybar's speculative allegation fails to show that counsel's strategic decision to not introduce each plea fell below an objective standard of reasonableness. A reasonable lawyer might conclude that buttressing each co-conspirator's testimony about the plea with the actual plea might be less than compelling. Even assuming deficient performance, Aybar's contention that counsel's offering each co-conspirator's plea would have resulted in an acquittal is dubious at best.

### 6. Ground eight

Undercover officers' surveillance video and audio recordings show Aybar's co-conspirators negotiating and completing the sale of cocaine. Aybar contends that the evidence negates Aybar's participation in the conspiracy because Aybar never

appeared in the video recordings and Aybar is not mentioned in the audio recordings. Aybar alleges that counsel performed deficiently by failing to offer at trial both the surveillance video and audio recordings as exculpatory evidence that Aybar "was not involved with any of the negotiations, transactions, *etc.*" (Doc. 1 at 12) Aybar concludes that his trial testimony, "if combined with recordings showing lack of presence, involvement, knowledge, *etc.*, would certainly have raised doubt in the jury's mind." (Doc. 1 at 9)

Lopez testified that Aybar participated in the conspiracy as "just a driver" and that for each shipment Aybar earned $2,000. (Doc. 73 at 180 and 198 in 09-cr-89) Other witnesses testified that Aybar served as the conspiracy's driver and that Aybar's co-conspirators negotiated the sale of cocaine and completed the illicit transactions. Counsel's affidavit affirms that he strategically withheld both the video and the audio recordings from trial because "Aybar was never a part of any discussions and/or negotiations regarding the purchase and sale of drugs at any time." (Doc. 12-1 at 4) Within the bounds of reasonable professional judgment, counsel declined to introduce the video and the audio recordings. *Mincey v. Head,* 206 F.3d 1106, 1143 ("We must respect the counsel's tactics if they seem 'reasonable considering all the circumstances.'" (quoting *Strickland*)). Aybar fails to explain why his absence in the video and the audio recordings negates the substantial evidence of his participation in the conspiracy as a driver. Also, a reasonable lawyer might have concluded that recordings of co-conspirators conducting illicit drug transactions

might stymie Aybar's defense. *Rhode v. Hall,* 582 F.3d 1273, 1287 (11th Cir. 2009) (holding that omitting aggravating, cumulative, or incompatible evidence is not ineffective assistance.). Because Aybar fails to establish deficient performance or resulting prejudice, he cannot prevail on this ground of ineffective assistance of counsel.

### 7. Ground nine

Aybar alleges that counsel failed to move for a mistrial and failed to move to strike testimony. Counsel's affidavit states that he "did not see a time during the presentation of evidence that would support a request for mistrial or a motion to strike testimony of witnesses." (Doc. 12-1 at 8) Aybar fails to further brief this ground in the motion, in the "memorandum of law," or in the reply. Aybar's factually unsupported allegation fails to support an ineffective assistance of counsel claim.

### 8. Ground ten

Aybar contends that counsel performed deficiently at the end of trial by failing to move for a directed verdict and by failing to move for a judgment of acquittal. (Doc. 5 at 13–19) "A motion for judgment of acquittal is a direct challenge to the sufficiency of the evidence presented against the defendant." *United States v. Aibejeris*, 28 F.3d 97, 98 (11th Cir. 1994). The circuit court's decision about the sufficiency of the evidence forecloses Aybar's general assertion that "the evidence presented at trial was insufficient to convict." (Doc. 5 at 14) Counsel's affidavit

states that he presented Aybar's defense and that "all relevant and legal instructions were given by the Court prior to closing arguments including all relevant instructions on the law of conspiracy." (Doc. 12-1 at 7) Counsel stated that he could not in good faith file a motion for a judgment of acquittal because the United States introduced sufficient evidence to present the matter to the jury. (Doc. 12-1 at 8–9) Aybar fails to rebut counsel's tactical justifications. As the district court explained at sentencing, the evidence against Aybar "was more than enough to sustain the jury verdict." (Doc. 75 at 17 in 09-cr-248) Aybar's conclusory assertions about the sufficiency of the evidence fails to show a reasonable probability that a motion for directed verdict or a motion for judgment of acquittal would succeed.

### III. Ineffective assistance of counsel at sentencing

Aybar asserts eight conclusory, unsubstantiated, or meritless grounds of ineffective assistance of counsel at sentencing. None warrants relief.

#### 1. Procedurally-barred claims

Aybar alleges that counsel at sentencing (1) failed to support Aybar's motion to substitute counsel, (2) failed to secure a minimal or minor role downward adjustment, and (3) failed to secure a sentence consistent with each co-conspirator's sentence. The circuit court denied each claim. *Aybar*, 446 Fed. App'x at 224. Aybar repeats each of the three claims under the guise of ineffective assistance of counsel, adding no new evidence justifying a different result. Aybar is not entitled to another review of the re-characterized claims. *United States v. Nyhuis*, 211 F.3d 1340,

1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal.").

## A. Ground two

Aybar alleges that counsel performed deficiently by failing to support Aybar's motion to substitute counsel at sentencing. (Doc. 5 at 33–37) Aybar contends that counsel failed to convey that "there was a clear break-down and animosity in the attorney-client relationship." (Doc. 1 at 19) As evidence of the "break-down," Aybar asserts that counsel at sentencing "painted him in a poor light before the Court, and bordered on the type of tattle-telling that occurs with children." (Doc. 5 at 37) But the circuit court upheld the denial of Aybar's motion to substitute counsel, which the district court described as "fanciful," based on the record's showing no good cause for substitution of court-appointed counsel. *Aybar,* 446 Fed. App'x at 227. Aybar is procedurally barred from reasserting as ineffective assistance of counsel a claim that was decided adversely on direct appeal. *Stoufflet v. United States,* 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence . . . that he already raised and that we rejected in his direct appeal.").

Even if his claim is not procedurally barred, Aybar offers no fact evidencing an inadequate defense. And counsel's affidavit states that he "filed all necessary Motions requested by the defendant and truthfully addressed Aybar's concerns and presented the same to the sentencing court." (Doc. 12-1 at 9) Counsel cannot

perform deficiently by failing to support a baseless motion. *Chandler*, 240 F.3d at 917-18.

## B. Ground three and ground six

Aybar alleges that counsel performed deficiently by failing to secure a mitigating role downward adjustment under U.S.S.G. § 3B1.2 for Aybar's purportedly minor or minimal role in the conspiracy. Aybar asserts that counsel should have highlighted at sentencing that Aybar neither negotiated nor planned nor transacted nor financed the illicit transaction. (Doc. 1 at 18; Doc. 5 at 40) The circuit court's ruling on direct appeal upholding the rejection of a minor or minimal role reduction precludes an argument that counsel performed deficiently. *Aybar,* 446 Fed. App'x at 228.

Even assuming his claim is not procedurally barred, Aybar's collateral challenge to counsel's purportedly deficient performance fails to rebut the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Counsel's affidavit states that he "did argue for departure and variances during the sentencing hearing and the Court granted to some extent the requests." (Doc. 12-1 at 9) The sentencing transcript shows that counsel argued unsuccessfully for a downward adjustment based on Aybar's role as driver in the conspiracy. (Doc. 75 at 19–22 in 09-cr-248). Counsel stated that Aybar "was not involved in any way, shape, or form with the financing, with the negotiations, with the decision making." (Doc. 75 at 19 in 09-cr-248) Also, counsel argued that no

evidence suggests that Aybar "was part of any of the money that was used or present for the purpose of purchasing drugs." (Doc. 75 at 19–20 in 09-cr-248) Aybar fails to show that counsel performed deficiently by failing to further highlight Aybar's role in the conspiracy.

### C.  Ground five and ground eight

Aybar alleges that counsel performed deficiently by failing to successfully challenge the sentencing disparity between Aybar's 131-month sentence and the sentence of each co-conspirator. (Doc. 5 at 40) Counsel's affidavit states that he advocated for "the disparity of roles and exposure for the defendant as compared to his co-conspirators." (Doc. 12-1 at 9–10) The sentencing transcript supports the determination that Aybar's term of imprisonment is based on his culpability relative to that of his co-conspirators. (Doc. 75 at 33 in 09-cr-248) The circuit court's ruling on direct appeal rejecting this underlying claim precludes an argument that counsel performed deficiently.

Also, Aybar's claim fails on the merits because Aybar offers no reasonably specific, non-conclusory fact to show that counsel's performance at sentencing fell outside the wide range of reasonable professional assistance.

### 2.  Ground one and ground seven

Aybar alleges that counsel failed to "properly present medical information" at sentencing and failed to move for a medical variance. (Doc. 1 at 5 and 18) Aybar

reasserts (Doc. 21) this claim in an amended Section 2255 motion and requests a downward adjustment based on his physical impairments.

Counsel's affidavit states that he pursued letters from doctors about both Aybar's physical impairments and Aybar's future medical needs. (Doc. 12-1 at 10) At sentencing, counsel described the difficulty in Aybar's history of quadruple bypass, multiple strokes, a heart attack, and type I diabetes. (Doc. 75 at 18–19 in 09-cr-248) Based on counsel's description of Aybar's physical frailty, Aybar received a downward variance to 131 months from his guideline calculation of 151 to 188 months. (Doc. 75 at 18–20, 30 in case 09-cr-248) Aybar offers no evidence about his medical condition at the time of the sentencing that counsel failed to present. (Doc. 5 at 41; Doc. 14-1 at 37-42) Aybar's vague claim lacks proof of both deficient performance and resulting prejudice as *Strickland* requires. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

### 3. Ground four

Aybar alleges that counsel failed to correct errors in the pre-sentence investigation report. (Doc. 1 at 5) But counsel's affidavit states that he "was provided limited information by the Defendant to allow for adequate correction of information within the PSR." (Doc. 12-1 at 9) Aybar fails to further brief this ground in the motion, in the "memorandum of law," or in the reply. As explained to Aybar at sentencing, Aybar's case involves a simple pre-sentence report and a simple

advisory guideline range calculation. (Doc. 75 at 4 in 09-c4-248) Aybar's factually unsupported allegation fails to support an ineffective assistance of counsel claim. Assuming that counsel performed deficiently by failing to object to the pre-sentence report, Aybar cannot show prejudice. Sentenced below the guideline range, Aybar's sentence is not attributable to counsel's consenting to the pre-sentence report.

**Evidentiary Hearing**

Aybar requests an evidentiary hearing. This case warrants no evidentiary hearing because the face of the motion, the supplements, the annexed exhibits, and the earlier proceedings show that the movant is not entitled to relief. *Broadwater v. United States,* 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1), the motion to add a new claim to the motion to vacate (Doc. 21) are **DENIED**. Warren's motion for an expedited ruling on the motion to vacate (Doc. 23) is **DENIED AS MOOT**. The clerk must enter a judgment against Aybar and close this case.

### DENIAL OF BOTH
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Aybar is not entitled to a certificate of appealability. A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a

certificate of appealability. Section 2253(c)(2) permits issuing a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Aybar must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because Aybar fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Aybar is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Aybar must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 22, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE